## BIDWELL v. HAAS.

(Supreme Court, Appellate Term. February 18, 1910.)

1. BROKERS (§ 7*)—EMPLOYMENT—EVIDENCE.

  Where, after defendant purchased certain tobacco, which plaintiff and other brokers had been authorized to sell, defendant called in all samples in the hands of plaintiff and others, and told plaintiff that he desired to know what brokers had the tobacco, in order to avoid having several brokers call on the same people, whereupon plaintiff named the customers with whom he had been dealing, and defendant said, "All right," but it did not appear that defendant ever furnished plaintiff any samples of the tobacco thereafter, the evidence of plaintiff's employment to sell the tobacco for defendant was insufficient.

  [Ed. Note.—For other cases, see Brokers, Dec. Dig. § 7.*]

2. BROKERS (§ 40*)—SERVICES—PROMISE TO PAY.

  That a purchaser of tobacco acted on the suggestion of a broker employed by a former owner of the property that a third person would probably buy the goods does not imply a promise to pay the broker for his services, if the suggestion results in a sale, without evidence showing that the suggestion was made and accepted under circumstances that would

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

permit the broker to assume that he was at the time in the employ of the party desiring to sell.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 40.*]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Charles P. Bidwell against Abraham Haas. From a Municipal Court judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Epstein Bros., for appellant.
Herman R. Elias, for respondent.

LEHMAN, J. The plaintiff, a tobacco broker, was employed to sell some tobacco belonging to the National Park Bank. He was apparently employed, not by the National Park Bank, but by one Grey, acting either for himself or for Gustave Solomon & Bro., an old, established tobacco house. He did not effect any sale of the tobacco under the employment. Subsequently the tobacco was bought by the defendant, who called in all the samples which were in the hands of the brokers. The day after the samples were called in by the defendant, the plaintiff claims that he called on the defendant to ask about those samples, and the defendant stated that he had sent for the samples, because he had bought the tobacco and wished to get the stock straightened out, as he wanted to know what brokers had the tobacco, in order to avoid having several brokers call on the same people. The plaintiff then stated that he had called on S. Rossin & Sons and a Mr. Newberger, and defendant said, "All right." Thereafter he told the defendant that the only party to whom he could sell a large part of the tobacco was Mr. Newberger, and that he had better go over at once, and defendant said that very likely he would. Plaintiff immediately called on Newberger, and told him that defendant owned the tobacco, and Newberger stated he would talk with Haas about the tobacco as soon as Mr. Haas was ready. It does not appear that the message was repeated to defendant. The next day plaintiff called upon defendant for some samples, and Newberger came out of the sample room and said to the defendant, "Very well, gentlemen; next Tuesday I will go to the warehouse and look at that tobacco." On the following Tuesday the sale was consummated.

Upon this appeal the first question is whether the plaintiff's testimony shows any employment by the defendant. It seems to me that the fact that the defendant called in the samples is evidence that he desired to terminate the employment of the brokers in regard to this tobacco. Concededly he never thereafter furnished the plaintiff with other samples of this particular lot of tobacco, and, while there is some vague evidence as to samples for other lots, the record in this regard is so indefinite that this testimony can in no way support an inference of a subsequent employment. Moreover, even if the plaintiff thereafter again visited Newberger, it was not at defendant's direction; for his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

testimony is open only to the inference that he had advised the defendant to go to see Mr. Newberger to carry on the negotiations himself.

The case, therefore, resolves itself into this question: Does the fact that a purchaser of goods acts upon the suggestion of a broker employed by a former owner that a third party would probably buy the goods raise an implication of a promise to pay the broker for his services, if the suggestion results in a sale? It seems to me that it is clear that such a promise to pay cannot be implied, unless there are other facts that would show that this suggestion was made and accepted under circumstances that would permit the broker to suppose that he was at the time in the employment of the party desiring to sell. I find no such facts in this case, nor do I find that the offer by defendant to pay the plaintiff $35 is, under the peculiar circumstances of this case, an admission of great materiality upon this question.

In this discussion I have accepted the plaintiff's evidence as to his employment as true, because the defendant was in one important and material detail expressly contradicted by Mr. Newberger, an apparently disinterested witness, and therefore the court may have with propriety disregarded defendant's entire testimony. Accepting, however, Mr. Newberger's testimony as true on all points, then it is very doubtful whether the plaintiff, even if employed, was the procuring cause of the sale. The relations of the plaintiff, Grey, Solomon, and Haas are so mixed, and the testimony so vague, that, while I feel that plaintiff has certainly not made out a cause of action, upon a new trial his testimony may be more definite, and he may be able to show, not only his employment by defendant, but due performance by him of the terms of such employment.

Judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.